UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re

RONALD J. SCHABEL and
DEANNE D. SCHABEL,

          Debtors.
_____

NEIL R. McKLOSKEY, TRUSTEE

          Plaintiff,
v.

HENRY SCHABEL and
DIANE SCHABEL,

          Defendants.

Case No. 04-35733

Chapter 7

Adversary No. 05-2270

_____

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT
_____

       The chapter 7 trustee brought this adversary proceeding to avoid and recover a preferential transfer made by the debtors to Henry and Diane Schabel, parents of the debtor, Ronald Schabel. After the defendants answered the complaint and asserted an affirmative defense, the parties filed simultaneous motions for summary judgment.

       This court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(F). This decision constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. For the reasons stated below, the defendants' motion for summary judgment is granted and the trustee's motion for summary judgment is denied.

BACKGROUND

       The relevant facts are not in dispute. The debtors, Ronald and Deanna Schabel, filed a

chapter 7 bankruptcy on November 3, 2004. In response to question number three on their Statement of Financial Affairs, "Payments to creditors," the debtors listed the defendants as creditors with an amount paid of $9,000. They provided the following explanation: "monthly payments equal to [$]9,000 in the last twelve months. Henry and Diane [the defendants] have made a subsequent new transfer of $9,153.00 to the Debtors on 10-21-04 which Debtors exempted."

Several years prepetition, the defendants placed a second mortgage on their home and loaned the value received to the debtors for the debtor husband's business. That loan was made on August 20, 1998, in the amount of $82,042.90. The debtors made monthly payments of $860.09 to the mortgage holder until September 20, 2004. At that time, the balance on the loan was $60,000.00. This loan carried an interest rate of 9.75% until 2001 and thereafter carried an interest rate of 6.5%. During the one year prepetition preference period the defendants received a benefit of approximately $9,000.00.

On September 27, 2004, the debtors met with their bankruptcy attorney and were advised of the preference problem, as well as possible defenses. In anticipation of a possible preference action and to help the debtors reorganize their finances, the defendants and the debtors entered into a second loan agreement. That loan had no interest.

On October 25, 2004[1], nine days before the bankruptcy was filed, the debtor's parents transferred $9,153.00 to the debtor and his spouse. The debtors placed the funds into an account at the Marine Credit Union and on the date of the petition the balance in that account was

---

[1]The date of the transfer in the statement of affairs and the stipulated facts differs by four days. This discrepancy is irrelevant.

2

$9,025.00. The debtors claimed those funds as exempt.

The trustee filed an adversary proceeding under 11 U.S.C. § 547(b)(1) and § 550(a)(1) against the defendants to avoid and recover the alleged preferential monthly transfers made by the debtor, Ronald Schabel, to his parents during the twelve months prepetition. The defendants asserted a subsequent new value defense to the action and these cross-motions for summary judgment followed.

ARGUMENTS

The defendants do not dispute that during the twelve months prior to the petition date that the debtors paid approximately $9,000 to the defendants' second mortgage holder in repayment of the 1998 loan. The defendants believe that their second loan, a subsequent transfer of $9,153.00, which also occurred prepetition, made the debtors' estate whole, and did not deplete the estate's assets to the disadvantage of other creditors. *See Matter of Prescott*, 805 F.2d 719, 731 (7th Cir. 1986) (holding "to the extent unsecured new value is given to the debtor after a preferential transfer is made, the preference is repaid to the bankruptcy estate"). The defendants acknowledge that both debts are subject to discharge, and they have no right to claim exempt funds.

The defendants assert the transfer meets the requirements for the new value defense: the creditors received a transfer which was otherwise voidable as a preference under section 547(b); after receiving the preferential transfer, the preferred creditors advanced additional credit to the debtor on an unsecured basis; and the additional post-preference unsecured credit was unpaid in whole or in part as of the date of the petition. *See In re Globe Building Materials, Inc.*, 325 B.R. 253, 259 (Bankr. N.D. Ind. 2005). Avoidance of the transfers would allow the estate a double

3

recovery at the expense of the defendants.

The trustee acknowledges that under section 547(c)(4) new value is a defense to a preference claim. However, that is not the case here. The funds were placed into an exempt category for the sole purpose of defeating a preference claim and to the detriment of other unsecured creditors. The trustee asserts the transfer of value was of a temporary nature and not made in good faith. Arguably, the undocumented "loan" could be returned immediately after the bankruptcy was concluded, or the funds could be kept and construed as a gift. Since the filing of the petition, the debtors have repaid $5,000 on the "loan," resulting in the inability to assert the new value defense. *See In re Login Bros. Book Co.*, 294 B.R. 297 (Bankr. N.D. Ill. 2003) (noting the section 547(c)(4) defense fails if the new value is repaid, pre- or postpetition).

## DISCUSSION

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Section 547(b) of the Code sets forth the essential elements of a preference: (1) any transfer; (2) of an interest of the debtor in property; (3) to or for the benefit of a creditor; (4) for or on account of an antecedent debt; (5) made while the debtor was insolvent; (6) made on or within 90 days before filing the petition, or between 90 days and one year of the petition's filing if such creditor was an "insider"; and (7) that enables such creditor to receive more than it would otherwise receive in a chapter 7 liquidation case. Section 547(g) provides that "the trustee has the burden of proving the avoidability of a transfer under subsection (b)." *See In re Jones*, 226

4

F.3d 917, 921 (7th Cir. 2000). The elements of a preferential transfer have not been disputed by the defendants, including the defendants' insider status.

A preferential transfer will not be avoidable to the extent that the transferee, after such transfer, gives new value to the debtor on an unsecured basis. 11 U.S.C. § 547(c)(4). This exception is premised on the theory that "to the extent unsecured new value is given to the debtor after a preferential transfer is made, the preference is repaid to the bankruptcy estate." *Matter of Prescott*, 805 F.2d 719 (7th Cir. 1986). Creditors are no worse off on account of the preferential transfer because value comes back into the estate for distribution to general creditors. However, the exception requires that after receipt of the preferential transfer, the preferred creditor must advance additional credit to the debtor on an unsecured basis, i.e., new value under section 547 must "not be secured by an otherwise unavoidable security interest." 11 U.S.C. § 547(c)(4)(A). The apparent purpose of this provision is that if the creditor makes a secured transfer, the creditor would receive payment in full for the new value, and the estate would not be replenished.

Congress intended section 547(c)(4) to encourage creditors to continue doing business with troubled debtors by protecting transfers received by creditors from preference actions, to the extent that the creditors provided goods that replenished the estate during the preference period. *In re Armstrong*, 291 F.3d 517, 525 (8th Cir. 2002). The exception most obviously applies to revolving credit relationships; protecting a creditor who extends a "revolving credit" to a debtor is not unfair to other creditors because preferential payments are replenished by the preferred creditor's extensions of new value to the debtor. *Matter of Toyota of Jefferson, Inc.*, 14 F.3d 1088 (5th Cir. 1994). The facts in this case do not fit neatly, or at all, into the scenario the drafters of the code had in mind.

5

Case 05-02270-mdm    Doc 14    Filed 12/23/05    Page 5 of 10

The trustee points out that a portion of the second transfer has been repaid post-petition by the debtors. Courts agree that to satisfy the first two elements of the subsequent new value defense, the new value must be given after the preferential transfer and the new value must be given on an unsecured basis, or at least not subject to an unavoidable security interest. That is undisputed here. However, there is a split of authority among the circuits as to whether the new value must remain unpaid as of the date of filing and at least one case that disallowed the defense when the goods constituting new value were returned after filing. The approach initially favored by a majority of the courts required that the new value extended remain unpaid on the petition date. *See, e.g., Matter of Kroh Bros. Dev. Co.*, 930 F.2d 648, 653 (8th Cir. 1991); *Matter of Prescott*, 805 F.2d 719 (7th Cir. 1986). In recent years, however, many courts have favored a different approach that comports with the statutory language and does not require that the new value remain unpaid. Under this line of cases, if the goods or services have not been paid for by "an otherwise unavoidable transfer," but have been paid for by a transfer that is itself subject to avoidance (or would be subject to avoidance but for the section 547(c)(4) new value defense), then the extensions of credit meet the overall goal of the statute and may still qualify as new value. *See In re JKJ Chevrolet, Inc.*, 412 F.3d 545, 552 (4th Cir. 2005) (". . .the requirement that the new value remain unpaid is inaccurate and confusing paraphrase. . . ."); *In re IRFM, Inc.*, 52 F.3d 228, 231 (9th Cir. 1995) (". . .instead of barring the new value defense altogether anytime new value has been repaid, this approach allows the new value defense if the trustee can recover the repayment by some other means").

Nevertheless, in *Prescott*, the Seventh Circuit expressly declared that "[s]ection 547(c)(4) establishes a subsequent advance rule whereby a preferential transfer is insulated from a trustee's

avoiding powers to the extent that a creditor extends new value, which is unsecured and *remains unpaid*." *Prescott*, 805 F.2d at 728 (emphasis added) (citation omitted). The court then applied that requirement to the facts of the case, finding that the bank creditor had no new value defense under section 547(c)(4) because "it never showed that any overdrafts were unpaid." *Id*. Since that was *Prescott*'s holding, not just a set of extraneous remarks, it cannot be dismissed as mere dicta. Courts since have regularly read *Prescott* as standing for the proposition that the new value must remain unpaid. *See Matter of P.A. Bergner & Co.*, 140 F.3d 1111, 1121 (7th Cir.1998) (citing *Prescott* and stating that new value defense failed because creditor "gave no subsequent unsecured credit which remained unpaid"); *In re GGSI Liquidation, Inc.*, 313 B.R. 770 (Bankr. N.D. Ill. 2004) (followed precedent of *Prescott*); *see also In re Duncan*, 312 B.R. 184, 186 (Bankr. C.D. Ill. 2004) (post-preference unsecured credit was unpaid as of date of filing); *In re Sonicraft, Inc.*, 238 B.R. 409, 414 (Bankr.N.D.Ill.1999) (same); *In re Schwinn Bicycle Co.*, 205 B.R. 557, 568 (Bankr.N.D.Ill.1997) (same). Since *Prescott* was decided by the Seventh Circuit Court of Appeals, we are bound by the requirement that the subsequent transfer be unpaid at filing.

The court in *In re Login Bros. Book Co.*, 294 B.R. 297, 299 (Bankr. N.D. Ill.2003), was faced with a different fact situation and came to the conclusion that postpetition payment could negate the new value defense. The court cited *Prescott* for the principle that one of the "key elements" of the defense is that "the new value must remain unpaid"; however, it found the timing of the repayment of the new value irrelevant. In *Login* the creditor had shipped goods to the involuntary debtor valued in excess of the preferential payment, and the chapter 7 trustee returned the goods postpetition upon the order of the court. The new value defense was

7

disallowed because of the return of the goods. In essence, the decision puts the creditor in the same position it would have had if the goods had never been shipped to the debtor. It would be an anomaly to allow the creditor to keep its returned goods, leaving the bankruptcy estate unreplenished by the value of the goods transferred, and also to use the new value defense against recovery of the preference previously paid. This court is persuaded that *Login* should be limited to its facts and is inapplicable in the instant case.

The trustee points out that the second loan to the debtors was undocumented. The fact that the debtor/husband's parents have partially been repaid indicates that it probably was a valid loan. Even though it was presumably discharged, the debtor could voluntarily repay the loan, using exempt funds or funds from any other source. 11 U.S.C. § 524(f). Indeed, 11 U.S.C. § 547(c)(4) does not even require that the new value be in the form of a loan; it simply must not be secured by an otherwise unavoidable security interest or subject to an otherwise unavoidable transfer. One bankruptcy court determined that a corporate insider's subsequent advances to the debtor-corporation, after the debtor had engaged in alleged preferential transfers for the insider's benefit by paying corporate debts that the insider had guaranteed, did not have to be made pursuant to an enforceable credit agreement in order to constitute subsequent "new value," within the meaning of section 547(c)(4). The transfers could constitute "new value," regardless of whether they were properly characterized as loans, charitable contributions or even gifts. *In re Pro Page Partners*, *LLC*, 292 B.R. 622 (Bankr. E.D. Tenn. 2003).

In applying the new value test, it should be noted that there is no statutory requirement that the new value be related to the preference or that the new value be made in good faith by the

8

creditor.[2] Additionally, there is no legal authority that an insider bears a heightened burden of proof with respect to the section 547(c)(4) defense. Moreover, there is no case law holding that diminishment of the estate defeats the defense, even though many cases use the replenishment of the estate as the rationale for the defense. Finally, the words of the statute do not compel consideration of the size of the distributable estate in determining whether the defense applies, that is, whether the estate was in fact "replenished." The creditors are entitled to the defense allowed by 11 U.S.C. § 547(c)(4) notwithstanding that the debtors placed that new value in assets exempt from distribution to creditors. Once the transfer had been made, the debtors were entitled to save those funds or spend them, and the act of the debtor in claiming the funds exempt does not destroy the creditors' defense.

An unpublished decision, *In re Hoerr*, No. 04-82851, 2004 WL 2926156 (Bankr. C.D. Ill. Dec. 13, 2004), dealt with virtually identical facts, although procedurally the case was decided in the context of the trustee's objection to exemption. At issue in that case, and not here, was an Illinois exemption provision that might result in the disallowance of an exemption in property "purchased" with the intent to convert nonexempt property into exempt property or to defraud creditors. After analyzing the Illinois statute, the court was sympathetic to the trustee's position, but found for the debtors. With respect to the parents' new value defense, the court noted it could not "expand the avoidance rights provided in Section 547(b), or ... deem a defense

---

[2]Section 60(c) of the former Bankruptcy Act, from which section 547(c)(4) was derived, did include a good faith requirement:
> If a creditor has been preferred, and afterward in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him.

11 U.S.C. § 96(c) (1978).

9

provided by Section 547(c) inapplicable for what [it] perceives are equitable considerations." 2004 WL 2926156, at *6. The court also observed that a debtor is not obliged to structure his or her finances in a way to preserve or enhance the avoiding powers of a "hypothetical Trustee-in-waiting" or to maximize an anticipated bankruptcy estate. 2004 WL 2926156, at *5.

Accordingly, the trustee's motion for summary judgment is denied, and the defendants' motion is granted. The adversary proceeding will be dismissed without costs to either party. A separate order consistent with this decision will be entered.

December 23, 2005

                                                    Margaret Dee. McGarity
                                                   U.S. Bankruptcy Judge